**Antonio C. PADRON, Enrique Reyna, on behalf of themselves and all those similarly situated, Plaintiffs,**

v.

**Ed FEAVER, Secretary, Department of Children and Family Services, State of Florida, Douglas Cook, Director, Agency for Health Care Administration, State of Florida, Defendants.**

No. 97–2883 CIV.

United States District Court, S.D. Florida.

May 20, 1998.

Charles F. Elsesser, Jr., Miriam Harmatz, Florida Legal Services, Inc., Miami, FL, Anne Swerlick, Florida Legal Services, Inc., Tallahassee, FL, for Plaintiffs.

Maxine S. Ryan, Assistant Attorney General, Office of Attorney General, Civil Litigation Division, Ft. Lauderdale, FL, for Defendants.

### ORDER RE PENDING MOTIONS

BROWN, United States Magistrate Judge.

The following matters are pending[1] before this Court: Defendants' Motion to Dismiss Plaintiffs' Complaint for mootness and failure to state a cause of action, pursuant to Fed. R.Civ.P., 12(b)(6); Plaintiffs' Motion to Certify the Class, pursuant to Fed.R.Civ.P., 23(b)(2); and Defendants' Ore Tenus Motion to Abate. This Court having reviewed these Motions, Plaintiffs' and Defendants' respective Oppositions to these Motions, and all the pertinent portions of the record, and having heard argument of counsel at a hearing held on February 26, 1998, **FINDS AS FOLLOWS:**

### FACTS

Plaintiffs Antonia C. Padron ("Padron") and Enrique Reyna ("Reyna") are indigent, disabled individuals whose applications with the U.S. Social Security Administration (SSA) for federal Supplementary Security Income (SSI) benefits, pursuant to 42 U.S.C. § 1381, *et seq.;* 20 C.F.R. Part 416 were respectively denied on June 20, 1997 and, or

---

1. The parties in this matter have consented to allow this Court to dispose of these motions pursuant to 28 U.S.C. § 636(c)(1).

about December 30, 1996, due to their U.S. immigration status as parolees. However, under Florida law disabled indigents who are ineligible for federal SSI benefits, but who meet certain income/asset criteria may still be eligible for joint federal/state Medicaid benefits under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq. Fla.Stat.* § 409.904(1). Under the current federal/state regulatory framework, an application for SSI may also serve as an application for federal/state Medicaid benefits. Thus, when an applicant applies for Medicaid by means of an application for SSI, the SSA determines whether the applicant is disabled, or otherwise eligible and pursuant to an agreement[2] between the State of Florida, acting through the Department of Children and Family Services (DCFS) and the SSA. If that applicant is found eligible for SSI, the SSA will also make the determination of Medicaid eligibility. 20 C.F.R. § 416.2101 *et seq.*

However, if the applicant is found by the SSA to be ineligible for SSI, under the present regulatory arrangement the SSA does not provide the applicant with any notice regarding his/her pending federal/state Medicaid application. Instead the SSA, via its data exchange system (SDX/BENDEX), refers the Medicaid application directly to DCFS in order for it to determine eligibility. The SSA also provides DCFS with all information relevant to the Medicaid application including the reason for SSI denial 20 C.F.R. §§ 416.2116, 416.2145; 1634 Agreement.

The practice at issue involves the fact that following the SSA's referral of the Medicaid application, DCFS takes absolutely no action; i.e., it does not notify applicants of the referral and/or their federal appeal rights, or request any additional information requisite to the processing of these applications, nor does it make eligibility decisions on these referrals on a timely basis. Pursuant to current statutory requirements, once an application for Medicaid is filed, federal law mandates the state to render assistance with reasonable promptness and in a manner consistent with the best interests of the recipients. 42 U.S.C. § 1396a(a)(8), (a)(19).

Regarding disabled applicants, reasonable promptness is defined as a ninety day maximum response time, and this time standard can only be exceeded in "unusual circumstances." 42 C.F.R. §§ 435.911(c), (d). Moreover, upon making an eligibility decision, an agency "must send each applicant a written notice of the agency's decision ... and, if eligibility is denied, the reasons for the action, the specific regulations supporting the action and an explanation of his/her right to request a hearing." 42 C.F.R. § 435.912. Furthermore, applicants must be provided with an opportunity for a fair hearing if their application is not acted on with reasonable promptness. 42 U.S.C. § 1396a(a)(3).

Recently, DCFS commenced preliminary efforts to implement a new remedial rule in an effort to rectify these discrepancies. Nevertheless, the new rule, even if adopted, still fails to meet Defendants' prescribed statutory/regulatory duties and at present there is no definite date as to when the new rule would be implemented. Moreover, the proposed rule contains no guarantees that Plaintiffs, who have already waited far beyond the statutory time limit for their Medicaid applications to be processed, will receive any priority, or expedited processing. Furthermore, despite Plaintiffs' requests Defendants have refused to adopt any rule on a priority, or emergency basis. Plaintiffs also assert that the State of Florida Agency for Health Care Administration (AHCA), the state agency responsible for the administration of Title XIX of the Social Security Act, was aware of, and approved of, the aforementioned practice and took no action to halt, or eliminate this practice. *Fla.Stat.* § 409.901(2), (14).

Accordingly, on September 9, 1997 Plaintiffs sought declaratory and injunctive relief[3] on behalf of themselves and all others similarly situated as a class action pursuant to Fed.R.Civ.P., 23(b)(2). Plaintiffs sought to present a class consisting of all persons in the State of Florida who applied for and who

---

**2.** See: 1634 Agreement, Florida Laws, ch. 1996, 96–403 §§ 5, 8.

**3.** Plaintiffs filed an Emergency Motion for Preliminary Injunction pursuant to Fed.R.Civ.P., Rule 65.

have been denied SSI benefits on, or after August 22, 1996 and who have been negatively impacted by the Defendants' failure to process their applications for Medicaid in accordance with the requirements of federal law and the Fourteenth Amendment of the U.S. Constitution.

On September 23, 1997, the parties filed a joint stipulation re: Withdrawal of Plaintiffs' Motion for Preliminary Injunction which was followed on October 31, 1997 by a Joint Motion for Order of Abatement of Action and Stipulation which abated this action until December 16, 1997.[4] Under the terms of the joint stipulation, the Defendants agreed to notify, on, or before October 1, 1997,[5] "all persons in the State of Florida who were denied SSI benefits on August 22, 1996, or later, and who have not thereafter had their eligibility for Medicaid benefits determined by the Defendants," [6] that they had pending Medicaid applications.

It was further stipulated that Defendants would either "(a) process those persons' applications and within thirty days provide them with a notice of eligibility for benefits, or denial, or (b) request any additional information and then, within thirty days after being provided with said information, process those applications according to the information provided, and provide [the applicants] with a notice of eligibility for Medicaid benefits, or a denial." [7] Finally, Defendants agreed that they would provide Plaintiffs' counsel with a written report stating the number of persons who were mailed notices pursuant to the stipulation and the dates of those mailings within a period of five working days after the respective mailings.

### DISCUSSION

### I. MOTION TO DISMISS

█ Defendants argue that Plaintiffs have failed to state a cause of action under 42

U.S.C. § 1983 because they have not established that the DCFS/AHCA jointly acted under color of state, or territorial law to deprive them of a federal right(s). *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Moreover, Defendants contend that civil rights claims require allegations indicating an affirmative causal connection between the state actor's conduct and the alleged deprivation of a constitutional right. *McQueen v. Tabah*, 839 F.2d 1525, 1529 (11th Cir.1988). They further argue that the facts as alleged do not support allegations that the Defendants' actions deprived Plaintiffs of their civil rights, and absent an allegation of malice, these allegations do not constitute a cause of action. *Marx v. Gumbinner*, 716 F.Supp. 1434 (S.D.Fla.1989). Defendants also contend that Plaintiffs have failed to meet the Eleventh Circuit's pleading standard regarding § 1983 claims against public officials. *Oladeinde v. City of Birmingham*, 963 F.2d 1481 (11th Cir.1992) (factual detail must establish that the violated right was clearly established when the wrongful acts occurred).

This Court finds that Plaintiffs have established a sufficient factual basis supporting their allegations that Defendants' practices not only violate the Federal Medicaid Act, but are also violative of 42 U.S.C. § 1983. Moreover, this Court finds that Defendants have plead with specificity each of the elements of a § 1983 claim: (1) Plaintiffs suffered a deprivation of "rights, privileges, or immunities secured by the Constitution and the laws of the U.S.," specifically, the federal Medicare Act; (2) person(s), i.e., DCFS/AHCA, "acting under color of law caused the deprivation;" and (3) that the constitutional deprivation resulted from a custom, policy, or practice. *Wideman v. Shallowford Community Hospital, Inc.*, 826 F.2d 1030, 1032 (11th Cir.1987). This Court agrees with Plaintiffs

---

**4.** A Motion for Enlargement of Time through December 30, 1997 was granted on December 19, 1997.

**5.** Paragraph 4 of the Stipulation was amended on October 14, 1997 to read: October 10, 1997 and Paragraph 5 of the Stipulation was amended on October 31, 1997 to read: November 24, 1997.

**6.** See: Joint Stipulation re: Withdrawal of Plaintiffs' Motion for Preliminary Injunction, September 23, 1997, at 2 ¶ 3.

**7.** *Id.*

that Defendants have misapplied *Marx* in that the present case, unlike *Marx*, does not involve an action for damages, nor a claim of official immunity.

■ Furthermore, in the wake of *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (rejecting a heightened pleading standard for civil rights cases brought under § 1983) the *Oladeinde* standard is not applicable in the present case, as subsequent Eleventh Circuit decisions applying *Oladeinde* have deemed that this standard is only applicable in those cases involving defendants claiming qualified immunity who are being sued for damages in their individual capacities. *Malone v. Chambers County Bd. of Comm'rs*, 875 F.Supp. 773 (M.D.Ala.1994); *Arrington v. Dickerson*, 915 F.Supp. 1503 (M.D.Ala.1995); *Ross v. State of Ala.*, 893 F.Supp. 1545 (M.D.Ala. 1995). In a § 1983 claim asserted against a state official solely for declaratory and injunctive relief, there is no qualified immunity defense. *Fortner v. Thomas*, 983 F.2d 1024 (11th Cir.1993); *Wood v. Strickland*, 420 U.S. 308, 314 n. 6, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Accordingly, Defendants' argument is rejected.

■ Defendants further assert that Plaintiffs are not entitled to declaratory/injunctive relief and that their claims are moot because DCFS has already begun to comply with the terms agreed upon in the Joint Stipulations.[8] Moreover, DCFS maintains that its efforts in this regard are still ongoing and that a second set of approximately 37,069 notices, representing denials from October 1, 1997 forward, was being prepared for mailing as of February 20, 1998. Therefore, Defendants submit that since Plaintiffs' right to employ a class action is procedural and ancillary to the litigation of its substantive law claims, then once these substantive law claims become moot, this Court has no jurisdiction over the controversy as there is no violation to enjoin, and Plaintiffs would not be entitled to declaratory relief on 11th Amendment grounds. *Deposit Guaranty Nat. Bank, Jackson, Miss.*

*v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 1170, 63 L.Ed.2d 427 (1980).

■ This Court finds that Plaintiffs' claims are not moot because to date class members' Medicaid applications are still not being processed and class members have still not received determinations of their eligibility for Medicaid from Defendants. Moreover, excepting recent temporary efforts to ameliorate some of the effects of their illegal practice, this Court finds that Defendants have failed to provide any valid argument, or factual basis for their allegations that these claims are moot. Furthermore, this Court finds that to date Defendants have not made an adequate demonstration, as per the terms of the Joint Stipulations, of the actual implementation of a permanent policy change regarding the challenged practice. "[A]s a general rule voluntary cessation of allegedly illegal does not deprive [a] tribunal of [the] power to hear and determine the case, i.e., [it] does not make the case moot." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). In *Davis* the Court held that an abatement on mootness grounds is only required if

> (1) [i]t can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief, or events have completely and irrevocably eradicated the effects of the violation.

*Id.* at 631, 99 S.Ct. 1379 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)); *See also, Johnson v. State*, 586 F.2d 387 (5th Cir.1978) (changed policy, or voluntary cessation must satisfy all deficiencies of prior statute); *Naturist Society, Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir.1992) (superseding statute, or regulation moots a case only to the extent that it removes challenged features of the prior law). Defendants' mootness arguments are rejected.

This Court also finds no merit in Defendants' arguments that the injunctive and declaratory relief sought in this case is improp-

---

**8.** Defendants state that approximately 18,340 notices regarding pending Medicaid applications of persons who were denied SSI benefits by the SSA between August 22, 1996 and September 30, 1997, were mailed out on, or about October 16, 1997.

er, namely that Plaintiffs have failed to state a case for injunctive relief because they have not demonstrated: (1) they will suffer irreparable harm; (2) are lacking an adequate remedy; (3) have a clear legal right to the relief requested; and (4) that this remedy will serve the public interest. *See Wilson v. Sandstrom,* 317 So.2d 732 (Fla.1975); *Playpen South, Inc. v. City of Oakland Park,* 396 So.2d 830 (Fla. 4th DCA 1981). Nor does this Court find any merit in Defendants' argument that since DCFS has already begun mailing the requisite notices, the only evidence of harm constitute past harms, not warranting injunctive relief, and that therefore, Plaintiffs' prayers for relief are moot. *City of Jacksonville v. Wilson,* 157 Fla. 838, 27 So.2d 108 (1946); *Rodriguez v. Ram Systems, Inc.,* 466 So.2d 412 (Fla. 3d DCA 1985); *Quadomain Condominium Ass'n Inc. v. Pomerantz,* 341 So.2d 1041 (Fla. 4th DCA 1977); *City of Coral Springs v. Florida Nat. Properties,* 340 So.2d 1271 (Fla. 4th DCA 1976). Accordingly, Defendants' Motion to Dismiss based on mootness and failure to state of cause of action is hereby **DENIED.**

## II. *MOTION TO CERTIFY THE CLASS*

Defendants oppose Plaintiffs' Motion for Certification on the grounds that the issue is moot since the relief requested by Plaintiffs has already begun to be performed[9], as well as on the grounds that Plaintiffs have not fulfilled their burden of satisfying the requirements of Fed.R.Civ.P., Rule 23(a), (b)(1)(a), (b)(1)(b), and (b)(3).[10]

The requirements of Fed.R.Civ.P., Rule 23(a), are as follows:

(a) ... One, or more members of a class may sue, or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law, or fact common to the class; and (3) the representative parties will fairly and adequately the protect the interests of the class.

## A. *NUMEROSITY*

 Extrapolating from national statistics,[11] Plaintiffs estimate that the number of SSI denials in Florida on, or after August 22, 1996 is well in excess of 100,000 individuals. Plaintiffs are currently conducting discovery to determine the exact number of persons who have been denied SSI benefits in Florida since this date. However, Defendants concede that at least 18,340 persons were denied SSI benefits by the SSA between August 22, 1996 and September 30, 1997. Even under Defendants' estimate, this number is well beyond any conceivable number which could be accommodated by joinder in a single action. Moreover, this Court notes that other courts have continuously and routinely certified classes with far less than one hundred members. *Robidoux v. Celani,* 987 F.2d 931 (2d Cir.1993); *Custom v. Trainor,* 74 F.R.D. 409 (N.D.Ill.1977).

Defendants argue, however, that the numerosity requirement of Fed.R.Civ.P., Rule 23(a) can only be satisfied by a "rigorous analysis" which focuses on the potential class members who have grievances substantially similar to those espoused by the named representative Plaintiffs with standing to sue. *Jones v. Firestone Tire & Rubber,* 977 F.2d 527, 531–34 (11th Cir.1992), *cert. denied,* 508 U.S. 961, 113 S.Ct. 2932, 124 L.Ed.2d 682 (1993). They assert that it is improper to base a determination of the numerosity requirement on the total number of persons denied SSI, as this analysis is problematic, in part because some of these applicants will already be Medicaid recipients. Moreover, they contend that due to the ongoing nature of DCFS's claims processing and its liberal appeals process as well as the average number of notices that are returned to DCFS, marked undeliverable, the numbers of the affected group will consistently vacillate.

---

**9.** This Court has already rejected Defendants' mootness argument.

**10.** This Court notes that in order to certify class, pursuant to the Fed.R.Civ.P., Rule 23 plaintiffs must meet all the requirements of Rule 23(a), but only *one* of the provisions of Rule 23(b).

**11.** Nationally, approximately 2,560,000 persons were denied SSI benefits for the fiscal year ending 1995 and 5% of these applicants were located in the State of Florida. *See:* Social Security Bulletin, Annual Statistical Supplement 1996, Table 7.B SSI: State Data.

Therefore, they maintain that contrary to the representations made by Plaintiffs, there is absolutely no evidence to indicate that Plaintiffs have met the numerosity requirement of Fed.R.Civ.P., Rule 23(a).

Defendants have misapplied *Jones*. First, in *Jones* class certification was denied on the grounds of inadequacy because the class in question only consisted of seven members. Second, the *Jones'* court appears to support certification in the present case, in that the court stated that "..[G]enerally less than twenty-one is inadequate, more than forty adequate, with numbers in between varying according to other factors." *Cox v. American Cast Iron Pipe*, 784 F.2d 1546, 1553 (11th Cir.1986). Moreover, contrary to Defendants' arguments, the number of members of the Plaintiff class will not tend to vacillate so much as they will continue to increase over time.

### B. COMMONALITY

■ The second prong of Fed.R.Civ.P. 23(a) requires that there must be "questions of law, or fact common to the class." In the present case, Plaintiffs seek declaratory and injunctive relief as a means of challenging Defendants' combined policies which are uniformly being applied against all members of the Plaintiff class. In support of the proposed class, Plaintiffs rely on *Haitian Refugee Center, Inc. v. Nelson*, 694 F.Supp. 864 (S.D.Fla.1988). In *Haitian Refugee Center*, the court held that actions combining challenges to uniform practices with requests for declaratory, or injunctive relief, by their very nature deal with common questions of law and fact. *Id.* at 877.

Defendants counter that once an applicant is denied SSI benefits there is no federal requirement which mandates that he/she is expressly eligible for federal/state Medicaid benefits, and accordingly, any further determination as to whether or not an applicant of this type is eligible for federal/state Medicaid benefits, after an SSI denial, requires a case-by-case analysis. This Court recognizes that fact, however, Plaintiffs' complaint has adequately alleged common questions of law which allegedly establish that Defendants' policies violated Plaintiffs' rights which have been guaranteed by the provisions of federal Medicaid law and the U.S. Constitution. *Inter alia*, Plaintiffs have specifically alleged that all members of the Plaintiff class are entitled to:

> (1) have Medicaid "assistance ... furnished with reasonable promptness" 42 U.S.C. § 1396a(a)(8); (2) have "the [state] agency ... establish time standards for determining eligibility and inform the applicant of what they are ... [including a maximum of] ninety days for applicants who apply for Medicaid on the basis of disability" 42 C.F.R. § 435.912; (3) have their application finally disposed of through a finding of "eligibility, or ineligibility ..." 42 C.F.R. § 435.913; informed of their right to a hearing ... at the time of any action affecting his/her claim, and to be provided with the opportunity for a hearing when his/her claim is not acted on with reasonable promptness 42 C.F.R. § 431.206; 42 U.S.C. § 1396a(a)(3).

Complaint, ¶ 31.

Plaintiffs concede that there may be some individual factual differences among class members' claims. However, this Court notes that other courts have consistently certified classes in which there were common questions of law relating to the processing and determination of eligibility despite differing factual situations which might result in different outcomes for different class members. In *Marcus v. Heckler*, 620 F.Supp. 1218 (D.C.Ill.1985) the court found commonality in a class action challenging the disability determination procedures of the SSA although some members of the class were ultimately ineligible. Here, the court held that the plaintiffs, analogous to the Plaintiffs in the instant case, were not requesting an award of benefits, but rather an order compelling the appropriate processing of their claims. Likewise, in *Johnson v. Heckler*, 100 F.R.D. 70 (N.D.Ill.1983) the court found commonality and rejected arguments which were almost identical to those in the instant case:

> The Secretary also claims that the common question of law raised by plaintiffs is too intertwined with the subordinate factual circumstances of each class member [i.e., too disparate] for purposes of class certifi-

cation. The Secretary appears to have misread plaintiff's complaint, however. What plaintiffs are seeking is this Court's ruling on the validity of two administrative policies for determining eligibility for benefits, not an adjudication as to whether individual class members are entitled to benefits thereunder. Hence, the class as defined by plaintiffs meets the legal requirement.

*Id.* at 74. It is this Court's opinion that the common questions of law on the issue of the legality of Defendants' policies apply equally to all class members and that these common questions are sufficient to establish the propriety of a class. *See Malloy v. Eichler,* 628 F.Supp. 582 (D.Del.1986); *Pottinger v. City of Miami,* 720 F.Supp. 955, 958 (S.D.Fla. 1989).

### 3. TYPICALITY

■ Defendants' objections to class certification based on a lack of typicality are misplaced. *See Appleyard v. Wallace,* 754 F.2d 955 (11th Cir.1985); *Love v. Turlington,* 733 F.2d 1562 (11th Cir.1984); *Debra P. v. Turlington,* 644 F.2d 397 (5th Cir.1981). The facts in *Appleyard* are virtually identical to the present case in that all of the members of the Plaintiff class were denied Medicaid after being medically evaluated pursuant to an allegedly illegal criteria. Although the district court in *Appleyard* declined to certify the class because it believed that the disparate medical conditions of each class member prevented a finding of typicality, the Court of Appeals for the Eleventh Circuit reversed, finding that the relief requested, i.e., a medical evaluation pursuant to appropriate criteria, was identical for all class members. Thus, in *Appleyard,* like the instant case, the court found the named plaintiffs' claims typical despite the fact that there were "vast factual differences surrounding the medical conditions of each," and that some might have been found ineligible under the requested criteria. *Id.* at 958.

In *Love,* the plaintiffs were Florida high school students who filed a class action in order to challenge an achievement test as being racially discriminatory. The complaint alleged that it unconstitutionally placed them "at risk" of not receiving a diploma. The *Love* court held at a statewide class was inappropriate due to a lack of typicality. Specifically, it found, unlike the facts in the instant case, that each district in the state independently applied the results of the test in a unique fashion, therefore, nowhere in the state was the test used to deny graduation, or a diploma to students. Moreover, the court found that there was no direct link between failing the test and the failure to obtain a diploma. As a result, it was impossible for the court to address the effects of the alleged discrimination on a classwide basis. In *Debra P.,* which also involved a challenge to a statewide achievement test, unlike *Love,* the results of the test were used uniformly throughout the state to deny diplomas.

This Court finds that in the instant case, the harm complained of is similar to that complained of in *Appleyard* and *Debra P.,* namely, that under color of law, the respective defendants promulgated a policy, or adopted custom, and/or practice which uniformly denied members of the plaintiff class their respective rights under federal law and the U.S. Constitution. In the present case, Defendants allegedly uniformly failed to process Plaintiffs' Medicaid applications in conformance with both federal law and the guarantees of the U.S. Constitution. Here, the challenged policy was allegedly uniformly applied throughout the State of Florida, and unlike *Love,* there is a direct nexus between the harm being done and Defendants' allegedly illegal policy of not processing class members' Medicaid applications. In this case, as in *Appleyard,* whether the individual class members are granted or denied Medicaid eligibility at the end of the determination process is irrelevant to their claims in this case, as the members of the Plaintiff class simply demand their statutorily guaranteed rights.[12]

12. Defendants have raised several objections to certification of the class which are inapplicable as they have no bearing on the Plaintiffs in the instant case which seek to certify the class pursuant to the Fed.R.Civ.P., Rule 23(b)(2), which states

(2) the party opposing the class has acted or refused to act on grounds generally applicable

Accordingly, for all of the above mentioned reasons, Defendants' Motion to Dismiss is Denied, and Plaintiffs' Motion to Certify the Class is Granted.

## III. DEFENDANTS' ORE TENUS MOTION TO ABATE

This Court finds that to date Defendants have only partially complied with the terms agreed upon in the Joint Stipulations. Moreover, Defendants' arguments as to why their failure to act in accordance with these stipulations should be distinguished from a mere failure to act, is without merit as it simply amounts to distinction without a difference. As it stands Plaintiffs have not yet received any significant relief in accordance with the terms of the Joint Stipulations. Nor, is it readily apparent to this Court that Defendants are fully prepared to provide the relief requested anytime in the near future. Accordingly, Defendants' Ore Tenus Motion to Abate is hereby **DENIED.**

to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; In order to certify a class pursuant to the Fed. R.Civ.P. 23, plaintiffs are required to meet all of the requisite elements of Rule 23(a), but only *one* of the elements found in Rule 23(b). Fed.R.Civ. P., Rule 23(a), (b). Therefore, Defendants' opposition to Plaintiffs' Motion on the grounds that Plaintiffs have failed to fulfill their burden of satisfying the requirements of Fed.R.Civ.P., Rule 23(b)(1)(a), (b)(1)(b), and (b)(3) are misplaced and hereby rejected. Plaintiffs have adequately demonstrated that the class in the instant case meets all of the requirements of Fed.R.Civ.P., Rule 23(b)(2).