I respectfully dissent.
In analyzing the holdings and implications of Walding v. BlueCross Blue Shield of Alabama, Inc., 577 So.2d 853 (Ala. 1991), and the case on which it principally relied, Shores v. Sklar,885 F.2d 760 (11th Cir. 1989), the majority opinion notes that those cases involved the application of "the consent-to-judgment waiver doctrine," but concludes that consent "is not an essential precondition of a determination of mootness." 932 So.2d at 99. For that reason, the main opinion further concludes that "the Suggses' refusal to execute a stipulation of dismissal after unequivocally accepting the settlement is not a factor that distinguishes this case from Walding." 932 So.2d at 99. These propositions are stated without any citation to supporting authority or any explanatory analysis; they are preceded by a discussion of the concept of mootness, but none of the cases cited in that discussion involve putative class actions. In fact, whether those cases provide support for the asserted proposition that "settlement renders a judicial proceeding moot and thereby destroys jurisdiction in many cases," 932 So.2d at 97, is questionable.
In Saia Food Distributors Club, Inc. v. SecurityLink fromAmeritech, Inc., 902 So.2d 46 (Ala. 2004), the trial court first entered a partial summary judgment, holding a limitation-of-liability clause valid and enforceable, so as to "cap" potential damages at $5,800. The thus limited plaintiffs, Saia Food Distributors Club, Inc., and Norman Saia, Jr., sought to appeal that ruling, but this Court dismissed the appeal as being from an interlocutory, nonfinal order. Thereafter, the defendants made an offer of judgment, pursuant to Rule 68, Ala. R. Civ. P., in the amount of $5,800 plus court costs. After the plaintiffs failed to respond within the 10-day period prescribed by Rule 68, the defendants moved the court to dismiss the action for lack of subject-matter jurisdiction. Concluding that the claims had been rendered moot by the plaintiffs' failure to respond to the offer of judgment, the trial court dismissed the action. This Court reasoned, and ruled, as follows:
 "[T]he trial court granted the motion to dismiss for lack of subject-matter jurisdiction before this Court had an opportunity to address the issue whether the limitation-of-liability provision was enforceable.[9] Under the procedural posture *Page 101 
of this case, we cannot affirm the trial court's dismissal of Saia Food and Saia's complaint for lack of subject-matter jurisdiction. Saia Food and Saia were entitled to an appeal of the trial court's ruling on the enforceability of the limitation-of-liability provision. At the time the offer of judgment was made, Saia Food and Saia still had questions as to the validity of the trial court's ruling. Had they accepted the offer of judgment unconditionally, this case would have been settled, and their right to appeal would have been moot. . . .
 "The better approach would have been for Saia Food and Saia to have accepted the offer of judgment conditioned upon this Court's affirming the trial court's ruling as to the enforceability of the limitation-of-liability provision. That acceptance would have preserved Saia Food and Saia's right to appeal the earlier ruling while protecting Saia Food and Saia's right to reject the offer of judgment had this Court reversed the trial court's ruling on the enforceability of the limitation-of-liability provision.
 "However, we will not penalize Saia Food and Saia for failing to accept unconditionally a debatable offer of judgment when Saia Food and Saia had not yet confirmed that the amount of the offer of judgment was the most they could recover from ADT and Security-Link, particularly when, at the time the offer of judgment was made, no precedent for the resulting dismissal of the complaint existed in this State. We reverse the trial court's March 10, 2004, order, in which it dismissed Saia Food and Saia's complaint for lack of subject-matter jurisdiction based on their failure to respond to ADT and SecurityLink's offer of judgment.
 "[9] The trial court granted the motion to dismiss on the basis that it lacked subject-matter jurisdiction after this Court had remanded the case to the trial court for a determination of liability on Saia Food and Saia's claims of breach of contract and negligence. In its remand order, the Court did not address whether the trial court had properly capped ADT and SecurityLink's exposure to damages on those claims at $5,800."
902 So.2d at 55-56.
The Court did state in Twin City Fire Insurance Co. v.Colonial Life Accident Insurance Co., 839 So.2d 614, 615 (Ala. 2002), cited in the main opinion, that "[t]he settlement rendered the declaratory-judgment action moot," but that statement was totally incidental to the issues involved in the case and represented, at best, dictum. Finally, Southern Ry. v.Louisville N.R. Co., 241 Ala. 691, 4 So.2d 400 (1941), simply does not stand for the proposition attributed to it by the main opinion, to-wit: "settlement of claim is conclusive of all elements of claim except those specifically reversed by parties."932 So.2d at 98. The "settlement" involved in Southern Ry. was not a part of any underlying lawsuit, but was simply an agreement reached between two parties concerning the application of certain terms of the contract between them to particular fact situations. This Court, in addressing an appeal from a judgment in a lawsuit subsequently entered into between the parties, held only that the parties' prior settlement of the contract disputes that had arisen was binding between the parties with respect to the particular items then involved, but did not preclude disputing liability as to another item. 241 Ala. at 698, 4 So.2d at 405.
In Jones v. Southern United Life Insurance Co., 392 So.2d 822
(Ala. 1981), also discussed by the main opinion, Jones filed an action seeking monetary relief for herself and certification of her action as a class action. Before any class-certification *Page 102 
determination, the defendant tendered payment to Jones of the monetary amounts she was claiming, and she "accepted the offer of settlement," 392 So.2d at 825 (Chief Justice Torbert, dissenting). Thereafter "the trial court granted [the defendant's] motion for summary judgment on Jones's individual claim and dismissed the remaining portions of the action."392 So.2d at 823. On appeal, this Court stated: "The issue before this Court is whether Mary Jones, whose claim is rendered moot through satisfaction, prior to certifying the class, may be permitted to have the class certified, and proceed to represent that class, even though she no longer has a real interest in the right to be protected." 392 So.2d at 823. Quoting a case decided by the United States Court of Appeals for the Fifth Circuit, the Court noted that by filing a class action, Jones, as class representative, had assumed responsibilities to the members of the class, which responsibilities she could not terminate by satisfying her individual claim. Thus, Jones's satisfaction of her individual claim did not prevent certification of the class. Further, "[n]otwithstanding the mootness of the suit as to Mary Jones, it is not moot as to other members of the class, and she can continue to litigate the issues as a representative of the class. . . . [S]he was not ousted as a representative of the class when her individual claim was mooted by payment of her claim. . . ." 392 So.2d at 823.
Thus, the settlement by a class representative of his or her individual claim does not moot the claims of the class. The main opinion distinguishes Jones on the basis that in that case "the class representative sought to remain in the action and to proceed on behalf of the other class members," noting further that "[h]ere, the named plaintiffs are completely abandoning the action after unequivocally accepting a settlement and then trying to name new class representatives to take their place."932 So.2d at 99. In point of fact, the Suggses have no more abandoned the action than Mary Jones abandoned hers. Although, like her, the Suggses have accepted a settlement, they did not voluntarily dismiss their right to proceed as class representatives, and, before the entry of any orders of dismissal relating to their claims, they filed a motion to "substitute [certain named individuals] as plaintiff class representatives." When and if new class representatives were in place, any subsequent removal of the Suggses would cause no "break" in the continuity of the proceeding.
The Suggses did not thereafter consent to their dismissal from the action; rather, Pharmacia Corporation and employees of another manufacturer ("the manufacturers") moved the court to strike the purported substitution of class representatives and dismiss the action with prejudice. As noted in the main opinion, what the trial court ultimately did was to allow the complaint to be amended and then, as a last ruling in sequence, to grant the manufacturers' motion to dismiss the Suggses as plaintiffs, so that "they are herein dismissed as parties to this lawsuit." In the process, and in advance of that final ruling, the court noted that, although "class certification in the present matter would be difficult to establish" and was subject to a prior ruling by the judge previously handling the matter in Calhoun County, "[t]he court notes that the Second Amended Complaint reasserts class allegations after [the prior trial judge's] preliminary indication that class certification would be improper. Nonetheless, the Court at this time will reserve judgment as to whether this case should proceed as a class action based upon the class allegations contained in the Second Amended Complaint." The Calhoun Circuit Court entered that prior *Page 103 
order only 11 days after the action had been filed, including "class action allegations" and requesting class-action certification, and before any of the defendants had filed an appearance in the case. The order, apparently entered by the judge as a practical expedient on his own motion, read:
 "This Court has previously heard arguments on and has rejected class certification of claims such as those made in Plaintiffs' complaint. Simply put, this case is not amenable to class action due to the diversity of damages claimed by various Plaintiffs without more showing on the part of the Plaintiffs, the request for a class certification or a scheduling conference pertaining to such issues is denied."
Pursuant to Rule 23(c)(1), Ala. R. Civ. P., that order was subject to being "altered or amended before the decision on the merits." It would be fully appealable either on an interlocutory basis or upon entry of a final order. Ala. Code 1975, § 6-5-642. Despite the fact that the Suggses filed with their complaint their "motion for scheduling conference regarding class certification issues," such a conference being mandated by §6-5-641(b), and despite the fact that § 6-5-641(d) requires the court to hold a full evidentiary hearing on class certification on motion of any party, no such conference or hearing preceded the order. Moreover, after that order was entered the Suggses filed in the Calhoun Circuit Court their "First Amended Complaint," adding a claim for "medical monitoring" and adding additional averments to their previously asserted "Class Action Allegations." The manufacturers did not move to strike the amended class-action allegations but did assert in their answer to the first amended complaint that class-action treatment was not appropriate in the case and that "the trial court denied the class certification in this case on May 7, 2001." Thus, the first amended complaint was "on the books" and procedurally viable. Likewise, when the Suggses subsequently filed in the Calhoun Circuit Court their "Second Amended Complaint," reiterating their class-action allegations, no motion to strike was filed. Accordingly, "the class action allegations contained in the Second Amended Complaint" were available for the Jefferson Circuit Court judge to consider when he concluded that based upon the complaint as amended it would be appropriate for him to "reserve judgment as to whether this case should proceed as a class action."
I disagree with the conclusion reached in the main opinion that the circumstance present in both Walding, supra, and Shores,
supra, that the settling plaintiff executed a stipulation of dismissal without attempting to reserve any issues for appeal, is a distinction without a difference for the present case. The clearly stated raison d'etre of Shores was that, after class certification had been denied, the plaintiff accepted the defendant's settlement offer and consented to the entry of a judgment awarding the plaintiff a monetary award against the settling defendant and dismissing with prejudice the claims against the three remaining defendants. The Court in Shores
explained that the plaintiff's "consent to an entry of judgment, given without reservation of a right to appeal, bars a subsequent appeal of the order denying certification" and that "because he consented to the entry of judgment without reserving his right to appeal any portion thereof, [the plaintiff] has waived his right to appeal the denial of class certification." 885 F.2d at 762. The Court agreed that the plaintiff was "correct that his individual claims and the claims on behalf of putative class are distinct. However, both sets of claims were brought by a single party, i.e. [the plaintiff], and both were part of a *Page 104 
single action. [The plaintiff] consented to entry of judgment `in this action' without making any provision for appeal of any of the claims at issue. . . . The record indicates that [the plaintiff] consented to entry of judgment encompassing the entire action." 885 F.2d at 762-63 (footnote omitted).
Likewise, in Walding, after the plaintiffs' motion for certification of a class action was denied, they settled their claims with the defendant and "the parties filed a stipulation of dismissal with the trial court. [The plaintiffs] did not attempt to reserve any issues for appeal when that stipulation was filed." 577 So.2d at 854. After the trial judge entered a final judgment dismissing the complaint with prejudice, the plaintiffs appealed the denial of the motion to certify a class. Relying onJones, among other cases, the plaintiffs argued that class representatives should be allowed to appeal the denial of class certification even if their own claims have been extinguished. Distinguishing that case from the situation involved in Jones
and other cited cases, this Court stated "[h]owever, unlike the [plaintiffs], the plaintiffs in those cases did not consent to the court's entry of judgment." 577 So.2d at 855. Relying onShores, supra, this Court concluded that the plaintiffs' "consent to the judgment waived any right they had to appeal the court's denial of their motion to certify a class."577 So.2d at 856.
In this case the Suggses have not attempted, and need not attempt, an interlocutory appeal of the order of the Calhoun Circuit Court judge denying class certification, because the order of the Jefferson Circuit Court judge effectively altered or amended that earlier order by placing the issue of class certification "back on the table," reserving judgment as to whether the case should proceed as a class action based upon the allegations contained in the complaint as last amended.
I conclude that what the Jefferson Circuit Court judge has done, to the extent that he allowed the complaint to be amended to name new putative class representatives while the class claims asserted by the Suggses were viably available for consideration by virtue of the unstricken amended complaint, does not warrant reversal.